## STATE v. TRUJILLO.

No. 7575.   Decided July 10, 1951.   (233 P. 2d 701.)

See 41 C. J. S., Homicide, sec. 328. Intoxication as excusing commission of crime. 15 Am. Jur., Criminal Law, secs. 338 et seq.

*J. Keith Browne*, Salt Lake City, *Boyd Bunnell*, Price, for appellant.

*Clinton D. Vernon*, Atty. Gen., for respondent.

WADE, Justice.

This is the second time that defendant has been convicted of the first degree murder of Joe Lopez and sentenced to pay the death penalty. *State* v. *Trujillo*, 117 Utah 237, 214 P. 2d 626. The defects in the instructions which were the ground for granting the new trial on the first appeal were corrected in the second trial but defendant again asks us to reverse his conviction specifying errors in instructing the jury and claiming that the evidence is not sufficient to sustain the verdict. The claimed errors in instructing the jury are highly technical and based on strained interpretations of the wording of the instructions and after careful consideration we hold them to be without merit without stating the reasons therefor in detail.

We also hold the evidence sufficient to sustain the verdict. While the motive for the killing which occurred after the parties had been drinking together is not clearly shown and the jury might well have concluded that the killing was not the result of clear, calm, deliberate and premeditated planning, still, from all the evidence, we are satisfied that the jury could reasonably be convinced or persuaded therefrom beyond a reasonable doubt that the killing was deliberately and premeditatedly planned with a clear and calm mind.

From the evidence the jury could reasonably find the following facts: That bad feelings had existed for some time between the defendant and deceased growing out of a coal bill which defendant claimed deceased had owed him. That on the afternoon of the day when the killing occurred the

defendant with his friend Mandragon met decedent and his companion Herrera in several saloons in Price, Utah, and surrounding towns where defendant repeatedly made disparaging remarks about decedent and his wife. On these occasions the four of them drank beer and light wines together. Later in the evening, decedent and Herrera started to drive in decedent's car south from Price to Hiawatha and when they had gone about five miles they were overtaken and passed by defendant driving his car with Mandragon riding with him. In passing, defendant cut in sharply in front of decedent's car and stopped suddenly thereby forcing decedent to drive off the road and make a sudden and dangerous stop. Defendant then immediately got out of his car, took a .32 revolver and went back to decedent's car where he offered to fight decedent and Herrera. Defendant is a much larger man than any of the other persons present on that occasion but Herrera accepted his challenge to fight and he and decedent got out of their car and the three of them started across the road where defendant exhibited his gun and threatened to shoot the other two. Thereupon, Herrera said he was willing to fight if defendant would put the gun away and fight fairly. As they came close together and defendant continued threatening with the gun, Herrera tried to take the gun from him. A scuffle followed in which defendant struck Herrera violently in the body with his elbow, knocking his wind out, causing him to relinquish his hold on the gun and to sink to his knees and double up in pain. With his gun freed from Herrera, defendant began firing and while Herrera was still helpless from the blow, the decedent, who had taken no part in the scuffle, ran to his car and climbed in under the wheel. However, before he could get the car started, defendant came alongside of the car and pointed the gun through the left window which was open and shot decedent twice at close range through his body from which shots he died shortly thereafter.

Although the parties had been drinking, defendant was not so intoxicated that he had lost his power to drive his

car safely on the road, nor to plan to force decedent's car off the road and bring it to a stop. He was able to take his gun from the glove compartment where he usually kept it and go back to decedent's car and start a fight and after he had overpowered Herrera he appeared to deliberately run after the decedent and shoot and kill him while he was in his car and trying to escape. If the jury was convinced beyond a reasonable doubt that the foregoing was about what occurred at the time of the killing, then they could reasonably find therefrom that defendant with a clear and calm mind deliberately and intentionally shot and killed decedent and was therefore guilty of first degree murder. Such being the case, we find no error in the trial and the judgment of the trial court is affirmed.

WOLFE, C. J., and McDONOUGH and CROCKETT, JJ., concur.

HENRIOD, J., did not participate.